THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATED DOG CLUBS OF NYS, INC.<br>1971 Western Ave.<br>Albany, NY  12203 | )<br>)<br>)<br>) |
| AUSTRALIAN SHEPHERD CLUB<br>OF AMERICA<br>6091 E. State Hwy 21<br>Bryan, TX 77808 | )<br>)   Case No.<br>)<br>)<br>) |
| AMERICAN DOG BREEDERS<br>ASSOCIATION, INC.<br>P.O. Box 1771<br>Salt Lake City, UT  84110 | )<br>)<br>)<br>)<br>) |
| VIRGINIA FEDERATION OF DOG CLUBS<br>AND BREEDERS<br>P.O. Box 6<br>McLean, VA  22101 | )<br>)<br>)<br>)<br>) |
| CALIFORNIA FEDERATION OF<br>DOG CLUBS<br>P.O. Box 2341<br>Lancaster, CA  93539 | )<br>)<br>)<br>)<br>) |
| ALBANY KENNEL CLUB, INC.<br>55 Brickhouse Rd<br>Stillwater, NY 12170 | )<br>)<br>)<br>) |
| ALBANY OBEDIENCE CLUB, INC.<br>535 Wemple Road<br>Glenmont, NY  12077 | )<br>)<br>)<br>) |
| ALLPURRS CATTERY<br>48 Valley Cemetery Road<br>Athens, VT  05143-8413 | )<br>)<br>)<br>) |
| AMERICAN FOX TERRIER CLUB<br>2590 Low Dutch Road<br>Gettysburg, PA  17325 | )<br>)<br>)<br>)<br>) |

AMERICAN POMERANIAN CLUB )
P.O. Box 23163 )
Pittsburgh, PA  15222-6163 )
)
AMERICAN RUSSELL TERRIER CLUB )
371 S. Yarnallton Pike )
Lexington, KY 40510 )
)
BELGIAN SHEEPDOG CLUB )
OF AMERICA )
200 River Street )
Avon, NY  14414 )
)
CAT FANCIERS LEGISLATIVE GROUP )
28133 Wellington )
Farmington Hills, MI  48334 )
)
CHARLOTTESVILLE-ALBERMARLE )
KENNEL CLUB )
351 Key West Dr. )
Charlottesville, VA  22911 )
)
CHATTANOOGA KENNEL CLUB )
P.O. Box 4576 )
Chattanooga, TN  37405 )
)
CHIHUAHUA CLUB OF AMERICA )
13509 Redbird Ln. )
Grand Haven, MI  49417-9468 )
)
CLEVELAND COLLIE CLUB )
18209 Auburn Road )
Chagrin Falls, OH  44023 )
)
COLONIAL NEWFOUNDLAND CLUB )
13604 Bethel Road )
Manassas, VA  20112 )
)
COLUMBIA POODLE CLUB OF OREGON )
AND SOUTHWEST WASHINGTON )
13223 SE Harold St. )
Portland, OR  97235 )
)

DACHSHUND CLUB OF GREATER      )
BUFFALO                        )
3807 Irish Road                )
Wilson, NY  14172              )
                               )
DACHSHUND FANCIERS OF          )
CENTRAL VIRGINIA               )
1200 Peachtree Blvd.           )
Richmond, VA  23221            )
                               )
EAGLE ROCK KENNEL CLUB, INC.   )
P.O. Box 2441                  )
Idaho Falls, ID  83403-2441    )
                               )
ERIE CANAL SCHIPPERKE CLUB     )
2628 Pompey Hollow Rd.         )
Cazenovia, NY  13035           )
                               )
GOLDENDOODLE ASSOCIATION OF    )
NORTH AMERICA, INC.            )
780 Shanghai Rd.               )
Berkeley Springs, WV  25411    )
                               )
HURON VALLEY AUSTRALIAN        )
SHEPHERD ASSOCIATION           )
7120 Nollar Rd.                )
Whitmore Lake, MI  48189       )
                               )
INTERNATIONAL BENGAL CAT SOCIETY  )
5351 E. Thompson Road          )
Indianapolis, IN  46327        )
                               )
INTERNATIONAL SHILOH SHEPHERD  )
DOG CLUB                       )
7623 Dutch Street Road         )
Mount Morris, NY  14510        )
                               )
KENNEL CLUB OF PALM SPRINGS    )
P.O. Box 876                   )
Palm Springs, CA  92263        )
                               )
MINIATURE AUSTRALIAN SHEPHERD  )
CLUB OF AMERICA                )
P.O. Box 1526                  )
Red Oak, TX  75154             )
                               )

MINUTEMAN SAMOYED CLUB, INC.                )
49 Fred Short Road                          )
Saugerties, NY  12477                       )
                                            )
MISSISSIPPI CANINE COALITION, INC.          )
6068 U.S. Highway 98 West, Suite 142        )
Hattiesburg, MS  39402                      )
                                            )
NORTHLAND NEWFOUNDLAND CLUB                  )
27 Roaser Rd.                               )
Sand Lake, NY  12153                        )
                                            )
POTOMAC BASSETT HOUND CLUB                  )
4957 Swinton Drive                          )
Fairfax, VA  22032                          )
                                            )
SARATOGA (NY) KENNEL CLUB, INC.             )
P.O. Box 117                                )
Gansevoort, NY  12831                       )
                                            )
SCHENECTADY DOG TRAINING CLUB               )
823 Gower Road                              )
Scotia, NY  12302                           )
                                            )
SHAWANGUNK KENNEL CLUB, INC.                )
49 Fred Short Rd.                           )
Saugerties, NY  12477                       )
                                            )
SHETLAND SHEEPDOG CLUB OF                   )
WESTERN NEW YORK                            )
1361 East Park Road                         )
Grand Island, NY  14072                     )
                                            )
SOCIETY FOR THE PERPETUATION                )
OF DESERT BRED SALUKIS                      )
1313 East Circle Mountain Road              )
New River, AZ  85087                        )
                                            )
SYRACUSE OBEDIENCE TRAINING CLUB            )
8852 Caughdenoy Rd.                         )
Clay, NY  13041                             )
                                            )
TRI VALLEY SHETLAND SHEEPDOG                )
CLUB OF NORTHWEST LOS ANGELES               )
187 Newbury Lane                            )
Newbury Park, CA  91320-4625                )

WEIMARANER CLUB OF THE                    )
WASHINGTON DC AREA                        )
504 Appletree Dr.                         )
Leesburg, VA  20176                       )
                                          )
WORKING AUSTRALIAN SHEPHERD               )
CLUB OF UPSTATE NEW YORK                  )
398 Palmer Rd.                            )
East Greenbush, NY  12061                 )
                                          )
                          Plaintiffs,     )
                                          )
            v.                            )
                                          )
TOM VILSACK, Secretary of United          )
States Department of Agriculture,         )
                                          )
and                                       )
                                          )
UNITED STATES DEPARTMENT                  )
OF AGRICULTURE,                           )
1400 Independence Avenue, S.W.            )
Washington, D.C.  20250,                  )
                                          )
                          Defendants.     )
_____)

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Associated Dog Clubs of New York State, Inc., Australian Shepherd Club of

America, American Dog Breeders Association, Inc., Virginia Federation of Dog Clubs and

Breeders, California Federation of Dog Clubs, Albany Kennel Club, Inc., Albany Obedience

Club, Inc., Allpurrs Cattery, American Fox Terrier Club, American Pomeranian Club, American

Russell Terrier Club, Belgian Sheepdog Club of America, Cat Fanciers Legislative Group,

Charlottesville-Albemarle Kennel Club, Chattanooga Kennel Club, Chihuahua Club of America,

Cleveland Collie Club, Colonial Newfoundland Club, Columbia Poodle Club of Oregon and

Southwest Washington, Dachshund Club of Greater Buffalo, Dachshund Fanciers of Central

Virginia, Eagle Rock Kennel Club, Inc., Erie Canal Schipperke Club, Goldendoodle Association

of North America, Inc., Huron Valley Australian Shepherd Association, International Bengal Cat

Society, International Shiloh Shepherd Dog Club, Kennel Club of Palm Springs, Miniature

Australian Shepherd Club of America, Minuteman Samoyed Club, Inc., Mississippi Canine

Coalition, Inc., Northland Newfoundland Club, Potomac Bassett Hound Club, Saratoga (NY)

Kennel Club, Inc., Schenectady Dog Training Club, Shawangunk Kennel Club, Inc., Shetland

Sheepdog Club of Western New York, Society for the Perpetuation of Desert Bred Salukis,

Syracuse Obedience Training Club, Tri Valley Shetland Sheepdog Club of Northwest Los

Angeles, Weimaraner Club of the Washington, DC Area, and Working Australian Shepherd

Club of Upstate New York, for their complaint, state:

## INTRODUCTORY STATEMENT

Plaintiffs challenge, and seek (a) a declaration that regulations promulgated pursuant to

The Animal Welfare Act, 7 U.S.C. § 2131, *et seq.* ("AWA") by Defendants (collectively,

"USDA") are arbitrary, capricious and inconsistent with law; (b) a remand of such regulations;

and (c) an injunction precluding enforcement of such regulations pending remand.  The subject

regulations, known collectively as "The Retail Pet Store Rule," 9 CFR Parts 1-3 ("Rule"), were

issued as a final rule, and became effective on November 18, 2013.  78 FR 57227 [Docket No.

APHIS-2011-0003] September 18, 2013.

The Rule radically changes, without justification, 47 years of USDA's regulatory

oversight of retail pet stores.  Specifically, the Rule redefines "retail pet store" to potentially

require tens of thousands of dog and cat breeders throughout the United States, including

members of Plaintiffs, to obtain licenses, to subject their residences to unannounced, on-site

inspections, to incur substantial costs to comply with new structural and sanitation standards, to

risk the health and lives of their dogs and cats from exposure to the deadly Parvovirus,

Panleukopenia, and other diseases, and to place their personal safety at risk by opening their residences to strangers. These new requirements, which originally were proposed for one sector of the retail pet store industry – large breeders selling over the Internet – have in the final Rule been extended to apply to members of Plaintiffs, which are small-scale breeders, without any record support for doing so.

When Congress passed the AWA in 1966, it specifically exempted retail pet stores from AWA's licensing and inspection requirements. At that time, retail sellers of pets falling within the AWA's exemption consisted mostly of traditional "brick and mortar" pet stores and small-scale breeders whose places of business were typically their residences. Although Congress has amended the AWA several times since its passage, Congress has not changed or narrowed the AWA's exemption of retail pet stores. By promulgating a regulation instead of seeking a statutory solution in Congress, the USDA has circumvented Congressional intent. Moreover, the Rule's redefinition of "retail pet store" is inconsistent with the required record that was developed to justify the Rule. Specifically, the Regulatory Impact Analysis in the record is premised on USDA's admission that "[t]here is a great deal of uncertainty surrounding the number of facilities that will be affected," yet the final Rule is based on USDA's estimate that only between 2,600 and 4,640 breeders will be affected. In fact, as was noted in the comments, the Rule potentially affects tens of thousands of breeders, including the almost 19,000 members of the 42 Plaintiffs, located in all 50 states and the District of Columbia. Significantly, the clubs and registries comprised by Plaintiffs represent less than 1% of the dog and cat clubs and registries in the United States, yet the cumulative number of Plaintiff members alone is four times the maximum number of breeders that APHIS estimated would be potentially affected. The USDA never acknowledged the widespread nature of this effect in the final Rule.

As set forth below, the Rule is invalid because, among other reasons, it exceeds the USDA's authority under the AWA and is arbitrary, capricious and inconsistent with law in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702-706.

## JURISDICTION AND VENUE

1.    Plaintiffs seek judicial review of agency action pursuant to 5 U.S.C. §§ 702-706, a declaratory judgment pursuant to 28 U.S.C. § 2201, and injunctive relief pursuant to 5 U.S.C. § 705.

2.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 7 U.S.C. § 136n.

3.    Venue is appropriate in this district under 28 U.S.C. § 1391(e)(2).

## PARTIES

4.    Associated Dog Clubs of New York State, Inc. is a New York corporation with its principal place of business in New York.  It has 200 members who are potentially affected by the Rule.

5.    Australian Shepherd Club of America is an unincorporated association that is an International Dog Club and Registry of Purebred Australian Shepherds headquartered in Texas. It has nearly 10,000 members, more than 8,000 of whom are located throughout all 50 states and at least 3,126 of whom are potentially affected by the Rule.

6.    American Dog Breeders Association, Inc. is a Utah corporation with its principal place of business in Utah.  The corporation is a Pedigree Dog Registry organized in 1909.  More than 7,000 small-scale breeders throughout the United States register their dogs and puppies with this registry, and all are potentially affected by the Rule.

7.     Virginia Federation of Dog Clubs & Breeders is a Virginia corporation headquartered in Virginia. It has 2,000 members in 27 states and the District of Columbia who are potentially affected by the Rule.

8.     California Federation of Dog Clubs is an unincorporated association headquartered in California. It has 1,360 members who are potentially affected by the Rule.

9.     Albany Kennel Club, Inc. is a New York corporation with its principal place of business in New York. It has 40 members who are potentially affected by the Rule.

10.    Albany Obedience Club, Inc. is a New York corporation with its principal place of business in New York. It has 215 members who are potentially affected by the Rule.

11.    Allpurrs Cattery is an unincorporated association headquartered in Vermont. It has 2 members who are potentially affected by the Rule.

12.    American Fox Terrier Club is an unincorporated association headquartered in Pennsylvania. It has 485 members who are potentially affected by the Rule.

13.    American Pomeranian Club is an unincorporated association headquartered in Pennsylvania. It has 460 members who are potentially affected by the Rule.

14.    American Russell Terrier Club is an unincorporated association headquartered in Kentucky. It has 160 members who are potentially affected by the Rule.

15.    Belgian Sheepdog Club of America is an incorporated association headquartered in New York. It has 400 members who are potentially affected by the Rule.

16.    Cat Fanciers Legislative Group is an unincorporated association headquartered in Michigan. It has more than 200 members who are potentially affected by the Rule.

17.    Charlottesville-Albemarle Kennel Club is a Virginia corporation headquartered in Virginia. It has 32 members who are potentially affected by the Rule.

18.    Chattanooga Kennel Club is a Tennessee corporation headquartered in Tennessee.  It has 110 members who are potentially affected by the Rule.

19.    Chihuahua Club of America is an Illinois corporation headquartered in Michigan.  It has 450 members in 46 states who are potentially affected by the Rule.

20.    Cleveland Collie Club is an Ohio corporation headquartered in Ohio.  It has 30 members who are potentially affected by the Rule.

21.    Colonial Newfoundland Club is a Maryland corporation headquartered in Virginia.  It has 262 members who are potentially affected by the Rule.

22.    Columbia Poodle Club of Oregon and Southwest Washington is an Oregon corporation headquartered in Oregon.  It has 42 members who are potentially affected by the Rule.

23.    Dachshund Club of Greater Buffalo is a New York corporation headquartered in New York.  It has 25 members who are potentially affected by the Rule.

24.    Dachshund Fanciers of Central Virginia is an unincorporated association headquartered in Virginia.  It has 12 members who are potentially affected by the Rule.

25.    Eagle Rock Kennel Club, Inc. is an Idaho corporation headquartered in Idaho.  It has 44 members who are potentially affected by the Rule.

26.    Erie Canal Schipperke Club is an unincorporated association headquartered in New York.  It has 24 members who are potentially affected by the Rule.

27.    Goldendoodle Association of North America, Inc. is a West Virginia corporation headquartered in West Virginia.  It has 17 members who are potentially affected by the Rule.

28.    Huron Valley Australian Shepherd Association is an unincorporated association headquartered in Michigan.  It has 19 members who are potentially affected by the Rule.

29.     International Bengal Cat Society is an Ohio corporation headquartered in Indiana. It has 215 members who are potentially affected by the Rule.

30.     International Shiloh Shepherd Dog Club is a Virginia corporation headquartered in New York. It has 137 members who are potentially affected by the Rule.

31.     Kennel Club of Palm Springs is a California corporation headquartered in California. It has 18 members who are potentially affected by the Rule.

32.     Miniature Australian Shepherd Club of America is a New York corporation headquartered in Texas. It has 647 members who are potentially affected by the Rule.

33.     Minuteman Samoyed Club, Inc. is a Massachusetts corporation headquartered in New York. It has 63 members who are potentially affected by the Rule.

34.     Mississippi Canine Coalition, Inc. is a Mississippi corporation headquartered in Mississippi. It has 125 members who are potentially affected by the Rule.

35.     Northland Newfoundland Club is a New York corporation headquartered in New York. It has 127 members who are potentially affected by the Rule.

36.     Potomac Basset Hound Club is a Virginia corporation headquartered in Virginia. It has 50 members who are potentially affected by the Rule.

37.     Saratoga (NY) Kennel Club, Inc. is a New York corporation headquartered in New York. It has 76 members who are potentially affected by the Rule.

38.     Schenectady Dog Training Club is a New York corporation headquartered in New York. It has 180 members who are potentially affected by the Rule.

39.     Shawangunk Kennel Club, Inc. is a New York corporation headquartered in New York. It has 17 members who are potentially affected by the Rule.

40.     Shetland Sheepdog Club of Western New York is a New York corporation headquartered in New York.  It has 29 members who are potentially affected by the Rule.

41.     Society for the Perpetuation of Desert Bred Salukis is an Arizona corporation headquartered in Arizona.  It has 92 members in 26 states who are potentially affected by the Rule.

42.     Syracuse Obedience Training Club is a New York corporation headquartered in New York.  It has 286 members who are potentially affected by the Rule.

43.     Tri Valley Shetland Sheepdog Club of Northwest Los Angeles is an unincorporated association headquartered in California.  It has 42 members who are potentially affected by the Rule.

44.     Weimaraner Club of the Washington DC Area is a District of Columbia corporation headquartered in Virginia.  It has 104 members who are potentially affected by the Rule.

45.     Working Australian Shepherd Club of Upstate New York is an unincorporated association headquartered in New York.  It has 30 members who are potentially affected by the Rule.

46.     Defendant Tom Vilsack is the Secretary of the United States Department of Agriculture.

47.     Defendant United States Department of Agriculture is the federal government agency responsible for implementing and enforcing the AWA, 7 U.S.C. § 2131, *et seq.* and regulations promulgated thereunder.

## FACTUAL BACKGROUND

*The AWA Statutory and Regulatory Scheme*

48.     The AWA seeks to ensure the humane handling, care, treatment and transportation of certain animals that are sold at wholesale and retail for use in research facilities, for exhibition purposes, or for use as pets by means of federal licensing and inspection.  78 FR 57227.  When

Congress passed the AWA in 1966, it specifically exempted "retail pet stores," which term is undefined, from such federal licensing and inspection requirements:

> (f) The term "dealer" means any person who, in commerce, for compensation or profit, delivers for transportation, or transports, except as a carrier, buys, or sells, or negotiates the purchase or sale of, (1) any dog or other animal whether alive or dead for research, teaching, exhibition, or use as a pet, or (2) any dog for hunting, security, or breeding purposes, **except that this term does not include--**
>
> (i) **a retail pet store** except such store which sells any animals to a research facility, an exhibitor, or a dealer; or
>
> (ii) any person who does not sell, or negotiate the purchase or sale of any wild animal, dog, or cat, and who derives no more than $500 gross income from the sale of other animals during any calendar year;

7 U.S.C. § 2132 (emphasis supplied). At that time, retailers of pets covered under the exemption consisted mostly of traditional brick-and-mortar pet stores and small-scale breeders whose places of business were typically their residences. 78 FR 57227.

49.     Implementation and enforcement of the AWA has been delegated by the Secretary of Agriculture to the Administrator of the Animal and Plant Health Inspection Service ("APHIS") of the USDA. 7 U.S.C. § 2146. This includes the authority to promulgate regulations. 7 U.S.C. § 2151. APHIS has issued regulations pursuant to the AWA, 9 CFR parts 1-3. Prior to promulgation of the Rule, retailers selling animals by any means, including sight unseen sales conducted over the Internet or by mail, telephone, or any other method where customers do not personally observe the animals available for sale prior to purchasing or taking custody of them, were considered to be retail pet stores and as such had been exempt from licensing and inspection under 9 CFR § 2.1(a)(3)(i) and § 2.1(a)(3)(vii).

50.     On May 14, 2010, the USDA's Office of Inspector General published "Animal and Plant Health Inspection Service Animal Care Program Inspections of Problematic Dealers," Audit

Report 33002-4-SF ("OIG Report") that was critical of the manner in which APHIS had been enforcing the AWA.  78 FR 57244 [http://www.usda.gov/oig/webdocs/33002-4-SF.pdf].  The OIG Report noted, in particular, "[s]ome large breeders circumvented [the] AWA by selling animals over the Internet."  78 FR 57246 [OIG Report, Section 3: Internet].

51.      In one of its recommendations, the OIG Report stated that "[t]o ensure that large Internet sellers are inspected, APHIS should propose that the Secretary seek **legislative change** to cover these sellers under the AWA.  Specifically, the agency should propose that the Secretary recommend to Congress that it exclude Internet sellers from the definition of "retail pet store," thereby ensuring that large breeders that sell through the Internet are regulated under AWA."  http://www.usda.gov/oig/webdocs/33002-4-SF.pdf  [OIG Report, Finding 5, Recommendation 12, emphasis added].

52.      APHIS agreed with the OIG Report's recommendation and noted that "APHIS is currently providing information (including potential options) to Congress as requested regarding the proposed Puppy Uniform Protection and Safety Act (PUPS).  This bill would place dogs sold directly to the public via the Internet, telephone, and catalogue sales within the jurisdiction of the AWA.  In addition, APHIS will concurrently draft a legislative proposal for the Secretary by May 31, 2010."  http://www.usda.gov/oig/webdocs/33002-4-SF.pdf  [OIG Report, APHIS Response to Recommendation 12].

53.      On information and belief, APHIS did not draft a legislative proposal to submit to Congress, but instead acted on the OIG Report's recommendations by promulgating the Rule. The Rule goes far beyond the problem identified in the OIG Report that some large breeders had circumvented the AWA by selling over the Internet, and indiscriminately regulates small-scale breeders who have never been identified as a regulatory concern.

54.     To date, Congress has not amended the AWA, nor has Congress enacted any legislation that changes or narrows the scope of the AWA's "retail pet store" exemption.

55.     The Rule changes the definition of "retail pet store" to mean a place of business or residence at which the seller, buyer, and the animal available for sale are physically present so that every buyer may personally observe the animal prior to purchasing or taking custody of that animal after purchase, where only certain animals are sold or offered for sale, at retail, for use as pets. 78 FR 57227. Thus, the Rule requires small-scale dog breeders whose places of businesses are their residences to engage only in face-to-face transactions with buyers in order to maintain their exemption from the AWA. For 47 years, small-scale dog breeders have not been required to engage only in face-to-face transactions with buyers in order to be exempt from the AWA.

*The Purported Rationale for the Rule*

56.     According to APHIS, beginning in the 1990s, more retailers began to offer pets for sale sight unseen over the Internet and to sell and ship them nationwide. APHIS acknowledges that pet animals were sold sight unseen via telephone and mail order decades before passage of the AWA, but asserts that the Internet has made it possible for many more persons throughout the United States to buy pets online from retailers without having to be physically present at the seller's place of business or residence and personally observe the animals offered for sale. APHIS further asserts that the dramatic rise in sight unseen sales has resulted in increased complaints from the public about the lack of monitoring and oversight of the health and humane treatment of those animals. 78 FR 57227.

57.     On May 16, 2012, APHIS published in the Federal Register (77 FR 28799-28805, Docket No. APHIS-2011-0003) a proposal to revise the definition of "retail pet store" and related regulations with the stated intent of ensuring that the definition of "retail pet store" in the AWA regulations is consistent with the AWA and that all animals sold at retail for use as pets are

monitored for their health and human treatment.  The Rule, however, is inconsistent with 47

years of regulatory oversight under the AWA and ignores the potential adverse impacts that its

application will have on tens of thousands of small-scale breeders, including the almost 19,000

members of Plaintiffs.

*APHIS's Assumptions Concerning the Costs and Benefits of the Rule*

58.     Despite acknowledging that "[t]here is a great deal of uncertainty surrounding the number

of facilities that will be affected by this rule, as we acknowledged in the proposed rule, and as

evidenced in the public comments," APHIS concluded that "[b]reeders with an online presence

are those most likely to be selling the offspring sight unseen and thus are more likely to be

affected by this rule."  In particular, APHIS estimated that there could be between 8,400 and

15,000 such breeders in the United States, based on the assumption that for every five breeders

identified by APHIS in online breeder registries there is one other breeder that has not been

identified who also uses remote marketing methods.  However, APHIS also estimated that, when

all of the conditions in the Rule were taken into account, between 2,600 and 4,640 dog breeders

may be affected by the Rule.  APHIS further estimated that "about 325" cat breeders throughout

the United States may be affected by the Rule.  78 FR 57228.

59.     APHIS's methodology for calculating the number of breeders that may be affected by the

Rule is fundamentally flawed because, by limiting its analysis to a review of online breeder

registries, it ignores all breeders in the United States who are not listed in online breeder

registries but who are now required by the Rule to be regulated under the AWA for the first time.

60.     Newly regulated breeders will be subject to the Rule's licensing, animal identification

and recordkeeping requirements. In addition, the newly regulated breeders will be subject to

standards for facilities and operations, animal health and husbandry, and transportation.  Yet

APHIS concluded that "vast majority of newly regulated breeders will only need to incur

licensing, animal identification and recordkeeping costs and not need to make structural and/or operational changes in order to comply with the standards." 78 FR 57229.

61.     Despite acknowledging that "neither the number of entities that will need to make changes nor the extent of those changes is known," APHIS estimated that the cost for coming into compliance for currently noncompliant breeders could range from $2.9 million to $12.1 million in the first year.  APHIS further acknowledged that the majority of businesses affected are likely to be small entities, and that the "wide range in total cost is mainly derived from the uncertainty surrounding the total number of breeders that will need to become licensed as a result of this rule and the number that will then need to make structural or operational changes." Nevertheless, APHIS estimated that it would cost a newly regulated breeder no more than $2,608 for "one time structural changes" required by the Rule.  78 FR 57229.

62.     APHIS's methodology for calculating the cost of compliance for currently noncompliant breeders is fundamentally flawed for the same reason as its methodology for calculating the number of dog breeders that may be affected by the Rule is flawed: it ignores all breeders that are not listed in online breeder registries.  The Rule also grossly underestimated the costs of compliance for each newly regulated breeder.  In this regard, APHIS ignored the conclusion of its own Regulatory Impact Analysis that the overall cost of structural and operational changes that will be required by the Rule is unknown.

63.     APHIS submitted the proposed rule and its accompanying regulatory impact analysis and regulatory flexibility analysis to the Small Business Administration ("SBA") prior to the publication of the proposed rule.  78 FR 57246.  According to APHIS, SBA did not submit any comments on the proposed rule.  However, the record fails to document that the SBA conducted an analysis or review of the flawed cost analysis impact.

*Comments Concerning the Adverse Effects of the Rule*

64.     APHIS received 75,584 individual comments, 134,420 signed form letters, and 213,000

signatures on petitions submitted by organizations supporting or opposing the proposed rule.  78

FR 57229.  Among those submitting comments opposing the proposed rule were Plaintiffs,

which submitted their comments either individually or through the American Kennel Club

("AKC").  Among the comments made by Plaintiffs were:

65.     Plaintiffs commented that the Rule would have far more widespread effects than APHIS

estimated, and that it would require exponentially more than the 2,600 – 4,640 businesses that

APHIS estimated to become licensed and subject themselves to increased regulation.  *See, e.g.,*

http://www.regulations.gov/#!documentDetail;D=APHIS-2011-0003-3440 [Australian Shepherd

Club of America, Opposition to Docket No. APHIS-2011-0003 Animal Welfare; Retail Pet

Stores and Licensing Exemptions ("ASCA Comments")].

66.     Plaintiffs commented that the Rule's requirements for facility maintenance and

construction, shelter construction and primary enclosure minimum space would necessitate

exterior and interior modifications that would cost exponentially more than the amounts

estimated by APHIS.  *See, e.g.,* ASCA Comments.  Plaintiffs currently estimate that these costs

range between $10,000 and $25,000 for each residence.

67.     Plaintiffs commented that the APHIS Cost and Benefit Analysis Chart did not adequately

address costs and actions necessary to satisfy the Rule's requirements for the cleaning and

sanitation of areas in breeders' residences where dogs and puppies are housed.  *See, e.g.,*

http://www.regulations.gov/#!documentDetail;D=APHIS-2011-0003-10262 [Comments of

Franklin W. Losey ("Losey Comments")].

68.     Plaintiffs commented that the Rule fails to describe what breeders must do in order to

satisfy the facility maintenance and construction, shelter construction, primary enclosure

minimum space, and cleaning and sanitation requirements that must be met by all USDA licensed breeders. Losey Comments. The fact that APHIS hosted webinars on November 18 and December 5, 2013 – after the effective date of the Rule – establishes that, as a matter of due process, APHIS failed to provide sufficient notice about what is required, making it impossible for those breeders potentially affected by the Rule to understand if and how they are affected.

69.     Plaintiffs commented that the Rule will not achieve the intended purpose of ensuring that animals intended for use as pets are provided humane care and treatment because it ignores the risk of diseases being spread to dogs, cats, puppies and kittens. *See, e.g.,* http://www.regulations.gov/#!documentDetail;D=APHIS-2011-0003-14684 [American Kennel Club Comments on Proposed Rule US Department of Agriculture, Animal and Plant Health Inspection Service 9 CFR parts 1 and 2 RIN 0579-AD57 Animal Welfare; Retail Pet Stores and Licensing Exemptions, Addendum B ("AKC Comments")]. For example, Parvovirus is highly contagious and often fatal to dogs, especially puppies, and is commonly transmitted by the sole of shoes, which is why USDA inspectors wear shoe covers when inspecting kennels. The Rule's requirement of face-to-face transactions between sellers and buyers ignores the risk that prospective buyers may not realize that they may unwittingly become of a carrier of the Parvovirus merely by petting an infected dog or walking in an area where an infected dog has been. Losey Comments.

70.     Plaintiffs commented that the Rule would require small-scale dog and cat breeders to allow prospective purchasers who are strangers into their homes in order to satisfy the condition that all sales of pets be conducted face-to-face, putting their personal safety at risk and encroaching on the right of privacy. *See, e.g.,* AKC Comments.

71.    Plaintiffs commented that the Rule would make hobby breeders potential targets of animal rights activists who may attempt to disrupt their hobby of breeding dogs. *See, e.g.,* ASCA Comments. Significantly, breeders, including those who are members of Plaintiffs, are encompassed within the definition of "animal enterprise" in the Animal Enterprise Terrorism Act, 18 U.S.C. § 43, and are intended to be protected by the act.

72.    Plaintiffs commented that the Rule poses a threat to national security, especially as it relates to working dogs. Nothing in the record demonstrates that the Department of Defense or Department of Homeland Security reviewed the Rule for its potential impact on national security, or that USDA requested those agencies to review the Rule. Losey Comments.

73.    Plaintiffs commented that the Rule would lead to an irreversible loss of breed-specific gene pools and loss of rare breeds because of the requirement for face-to-face exchanges of pets. *See, e.g.,* ASCA Comments.

*APHIS'S Response to Comments and the Final Rule*

74.    Despite the enormous volume of comments and APHIS' own admitted uncertainty concerning the number of affected breeders and the cost of compliance, APHIS declined to alter the key terms of the proposed Rule.

75.    APHIS also failed to inform the Small Business Administration ("SBA") of the potential cost of the Rule to hobby breeders, all of whom are considered small businesses, and did not document that the SBA actually reviewed and responded to the agency's cost analysis.

76.    The final Rule, which became effective on November 18, 2013, states in pertinent part:

§ 1.1    *Retail pet store* means a place of business or residence at which the seller, buyer, and the animal available for sale are physically present so that every buyer may personally observe the animal prior to purchasing and/or taking custody of that animal after purchase, and

where only the following animals are sold or offered for sale, at retail, for use as pets: Dogs, cats
. . . ."

§ 2.1(a)(3)(iii) Any person who maintains a total of four or fewer breeding female

dogs, cats, and/or small exotic or wild animals . . . and who sells, at wholesale, only the offspring

of these dogs, cats, and/or small exotic or wild mammals, which were born and raised on his or

her premises, for pets or exhibition, and is not otherwise required to obtain a license.

## COUNT I
### (Violation of Section 706 of the Administrative Procedures Act)

77.     Paragraphs 1 through 76 are incorporated by reference as if fully set forth herein.

78.     The Retail Pet Store Rule is final agency action under 5 U.S.C. § 706.

79.     At the time the Retail Pet Store Rule became effective, USDA neither had nor disclosed

evidence to support the Retail Pet Store Rule.

80.     Among other things, the USDA has extended the Rule to small-scale breeders but failed

to consider the impact on small-scale breeders when it promulgated the Rule, and instead

assumed (because it claimed to lack sufficient information) that the impact would be minimal.

81.     Based on the foregoing, the Retail Pet Store Rule is arbitrary, capricious, and inconsistent

with law.

## COUNT II
### (Declaratory Judgment—Violation of the AWA)

82.     Paragraphs 1 through 76 are incorporated by reference as if fully set forth herein.

83.     This complaint presents an actual controversy regarding the interpretation of the AWA as

it relates to the scope and limit of USDA's authority to define "retail pet store" to require face-

to-face interactions between small scale breeders and buyers.

84.     Pursuant to 28 U.S.C. § 2201(a), to resolve the actual controversies regarding the

interpretation and application of the AWA and the USDA's authority with respect thereto,

Plantiffs seek a declaratory judgment, as set forth below, with respect to the duties and obligations of the USDA under the AWA.

85.    The AWA does not authorize the USDA to redefine "retail pet store" in the manner in which the Rule redefines that term.

## COUNT III
### (Injunctive Relief)

86.    Paragraphs 1 through 76 are incorporated by reference as if fully set forth herein.

87.    Plaintiffs lack an adequate remedy at law with respect to, and will suffer irreparable harm as a result of, the USDA's promulgation of the Rule.

88.    Plaintiffs cannot, in a suit for damages brought in this Court, recover damages as compensation for the costs, expenses, competitive and other injuries they have and will suffer as a direct result of actions of the USDA described herein.

89.    Plaintiffs ask, therefore, that, as an alternative form of relief, the Court enter an injunction in the form requested below.

WHEREFORE, Plaintiffs respectfully request that this Court:

a.    Hold unlawful and set aside The Retail Pet Store Rule and remand it to the agency for reconsideration;

b.    Declare that AWA does not authorize a redefinition of "retail pet store" and accordingly issuance of The Retail Pet Store Rule was error;

c.    Permanently enjoin enforcement of The Retail Pet Store Rule;

d.    Award attorney's fees and costs; and

e.    Award such other relief as is just.

Respectfully Submitted,

LAW OFFICE OF PHILIP H. HECHT PLLC

Philip H. Hecht (D.C. Bar #333286)

2855 Tilden Street, N.W.
Washington, D.C.  20008
Phone: 202-686-5073
phil@phechtlaw.com

Of Counsel:

Franklin W. Losey (Ohio Bar # 0021719)
            (Kentucky Bar # 42200)
2029 Tampa Boulevard
Navarre, FL  32566
Phone: 850-396-6049
franklosey@twc.com